# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# WAYCROSS DIVISION

| | |
|---|---|
| WILLIAM HOPE DAVIS, | |
| Plaintiff, | CIVIL ACTION NO.: 5:12-cv-27 |
| v. | |
| CORRECTIONS CORPORATION OF AMERICA; PEGGY ANN COOPER; AND KATRENA REED, | |
| Defendants. | |

## O R D E R

Plaintiff, who is currently housed at Coffee Correctional Facility in Nicholls, Georgia, filed this cause of action pursuant to 42 U.S.C. § 1983 to contest certain conditions of his confinement. (Doc. 1.) Defendants filed a Motion for Summary Judgment, (doc. 24), and Plaintiff filed a Response, (doc. 29). For the reasons which follow, Plaintiff's Motion to Amend is **GRANTED** in part and **DENIED** in part. The Court **GRANTS** Defendants' Motion and **DISMISSES** Plaintiff's Complaint, as amended. The Clerk of Court is **DIRECTED** to enter the appropriate judgment of dismissal and to **CLOSE** this case. Plaintiff is **DENIED** *in forma pauperis* status on appeal.

## BACKGROUND[1]

In this action, Plaintiff contends that Defendants' actions and policies prevented him from challenging his state court conviction. Plaintiff was convicted in 1990 in the Thomas County Superior Court of malice murder after a jury trial. The Georgia Supreme Court affirmed

---

[1] The recited allegations are taken from Plaintiff's Complaint and are viewed in the light most favorable to Plaintiff, the non-moving party.

his conviction in 1991. (Doc. 1, p. 10.) Plaintiff contends that in September 2011, he needed to file a notice of appeal and a certificate of probable cause to appeal after his state habeas petition was dismissed as being untimely and a successive petition. (Id. at p. 13.) Plaintiff avers that he had thirty days from the date of the state habeas court's order, or until September 15, 2011, to timely file these documents. (Id.) However, according to Plaintiff, Defendants prevented him from doing so.

Specifically, Plaintiff contends he has maintained a negative balance in his prison trust account and is deemed indigent for all purposes. (Id. at p. 14.) Plaintiff also claims that he submitted an indigent request form on September 12, 2011, along with three copies of the documents he needed mailed, in accord with the facility's indigent mailing procedures. Plaintiff states his documents were returned to him on September 15, 2011, by Defendant Reed, a former mailroom staff employee. (Id.) Plaintiff states he was informed it would have cost $2.76 to mail these pleadings, but the indigent postage amount allowed for legal mailings is only $2.20 (the equivalent of approximately five (5) first class postage stamps at that time) per week. Thus, Plaintiff alleges, he was not allowed to file these pleadings, which denied him access to the courts. Plaintiff also contends that Defendant Cooper, the former Assistant Warden, Defendant Reed, and the mailroom staff are responsible for inmates' access to the courts, indigent legal supplies, and indigent postage loans. (Id. at p. 18.) Plaintiff further contends that Corrections Corporation of America is liable for his denial of access to the courts by virtue of a policy this corporation has in place. (Id.)

Plaintiff's Complaint was served upon the above-captioned Defendants by Order dated May 8, 2012, based on Plaintiff's assertions that these Defendants' actions denied him access to the courts. (Doc. 8.) Defendants moved for summary judgment, and the Court granted their

Motion by Order dated January 17, 2013, with a specific finding that Plaintiff's Complaint was prematurely filed. (Doc. 32.)

Plaintiff appealed this Court's judgment to the Eleventh Circuit Court of Appeals. (Doc. 34.) The Court of Appeals determined this Court erred in concluding Plaintiff lacked standing to bring his claims and remanded this case back to this Court. (Doc. 43, p. 2.) In its Order of remand, the Eleventh Circuit noted that this Court had not addressed mootness or the merits of Plaintiff's claims and that "appropriate procedure indicates that the court below should address these matters in the first instance." (Id. at p. 3.) In light of this remand, the parties were instructed to file any additional pleadings in support of their respective positions regarding summary judgment. (Doc. 45.) Defendants filed a Response to that Order. (Doc. 52.) Plaintiff filed an Amended Complaint, to which Defendants responded. (Docs. 56, 57.)

## DISCUSSION

Defendants contend Plaintiff's access to the courts claims fails on the merits. (Doc. 24.) Plaintiff contends he has shown actual injury to his pursuit of a non-frivolous claim, and thus, has shown Defendants' actions interfered with his access to the courts. (Doc. 29, pp. 6–7.) The parties have submitted Statements of Material Facts, affidavits, and other materials in support of their respective positions.

As set forth below, the Court agrees that Plaintiff fails to create a genuine dispute as to any fact material to his claims. The undisputed facts warrant judgment in Defendants' favor, and Defendants' Motion is **GRANTED** as a result.

## I. Plaintiff's First Amended Complaint (Doc. 56)

By the Court's Order of January 26, 2015, the parties were directed to file any additional pleadings in support of their respective positions as to Defendants' pending Summary Judgment

Motion within thirty days. (Doc. 45.) Seemingly in response to that Order, Plaintiff filed his First Amended Complaint on April 16, 2015.[2] (Doc. 56.) The Court construes this filing as a Motion to Amend Complaint. In his Motion, Plaintiff recounts or expounds upon facts which he already presented to the Court in opposition to Defendants' Motion for Summary Judgment. (Id. at pp. 1–3.) Plaintiff also asserts that he has been subjected to involuntary servitude because he is forced to work as a library aide/law clerk without pay. (Id. at p. 4.)

The Court allows Plaintiff to amend his Complaint to the extent he is restating or expounding on allegations he had already presented to the Court. However, Plaintiff cannot amend his Complaint in this case to raise claims of involuntary servitude. First, these claims are unrelated to the allegations contained in Plaintiff's Complaint. Plaintiff cannot pursue unrelated claims in one Section 1983 action. Smith v. Owens, No. 14-14039, 2015 WL 4281241, at *4 (11th Cir. July 16, 2015) (upholding this Court's dismissal of unrelated claims pursuant to Federal Rule of Civil Procedure 20(a), which will allow the joinder of claims if the claims arise "out of the same transaction, occurrence, or series of transactions or occurrences" and if "any question of law or fact common to all defendants will arise in the action.").

Secondly, allowing these new claims to proceed would run counter to the Rules of Civil Procedure. Federal Rule of Civil Procedure 15(a)(2) directs that "[t]he court should freely give leave [to amend pleadings] when justice so requires." Thus, generally, a district court should afford a plaintiff at least one opportunity to amend a complaint in order to correct deficiencies. Langlois v. Traveler's Ins. Co., 401 F. App'x 425, 426 (11th Cir. 2010) (citing Corsello v. Lincare, Inc., 428 F.3d 1008, 1014 (11th Cir 2005)). "Ordinarily, if the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, leave to amend should

---

[2] Defendants assert Plaintiff's pleading is untimely per this Court's January 26, 2015, Order. (Doc. 57, p. 1.) Defendants' response to this Order was also untimely, as it was not filed until March 11, 2015. (Doc. 52.) The Court nevertheless accepts these filings, except as noted in the body of this Report.

4

be freely given." Hall v. United Ins. Co. of Am., 367 F.3d 1255, 1262 (11th Cir. 2004) (quotations and citations omitted).

Even so, if a court has entered a scheduling order prescribing a deadline for motions to amend pleadings, a plaintiff seeking leave to amend his complaint after that deadline must demonstrate "good cause." Carter v. Broward Cty. Sheriff's Dep't Med. Dep't, 558 F. App'x 919, 923 (11th Cir. 2014) (citing S. Grouts & Mortars, Inc. v. 3M Co., 575 F.3d 1235, 1241 (11th Cir. 2009)); see also Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). In addition, a court need not allow leave to amend "(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." In re Engle Cases, 767 F.3d 1082, 1108–09 (11th Cir. 2014) (quoting Bryant v. Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001)).

Here, Plaintiff's amendment would be futile, given the undersigned disposition of Defendants' Motion. In addition, Plaintiff's Complaint was filed on April 6, 2012. (Doc. 1.) The parties had until August 28, 2012, to amend their pleadings or to add parties. (Doc. 15.) Plaintiff's Amended Complaint was filed on April 16, 2015, which is more than three and half years after the expiration of time to file amended pleadings. Plaintiff does not explain his undue delay, and allowing him to amend his complaint at this point of the proceedings would be prejudicial to the Defendants. Consequently, Plaintiff has failed to show good cause to add unrelated claims of involuntary servitude to this case.

Plaintiff's Motion to Amend Complaint is **GRANTED** in part and **DENIED** in part. Plaintiff is allowed to add allegations that merely restate or expound on allegations he had

already presented to the Court. Moreover, the Court has considered such amended allegations when resolving Defendants' Motion for Summary Judgment. However, Plaintiff shall not be permitted to add claims that are unrelated to his original Complaint.

## II. Standard of Review

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, there must exist a conflict in substantial evidence to pose a jury question." Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex v. Catrett, 477 U.S. 317, 322–23 (1986)). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable

to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cty., Fla., 630 F.3d 1346, 1353 (11th Cir. 2011).

**III.     Access to the Courts Claims**

Defendants contend Plaintiff's claims fail because he has not shown that their actions caused him to suffer any injury in his pursuit of a non-frivolous claim. (Doc. 24, p. 7.) Defendants note Plaintiff's assertions that he was in fact injured because he was required to mail three envelopes at one time by September 15, 2011, to perfect his appeal of the denial of his third state habeas corpus petition and was denied this opportunity by Defendants due to the restrictions of the indigent legal postage allotment. Defendants counter that Plaintiff could have chosen to mail one or two of these envelopes, particularly the envelope containing his petition to the Georgia Supreme Court, which would have fallen within the limits. (Id.) Defendants assert Plaintiff did not use any of his available free mailings from August 16, 2011, which is the date the state court denied his petition, until September 15, 2011. (Id. at p. 8.) Defendants maintain Plaintiff could have preserved his appellate rights if he had used the free legal postage to its limits or mailed his items in successive weeks. Defendants assert that, by the time they filed their Motion for Summary Judgment, Plaintiff was able to file his application for certificate of probable cause to appeal with the Georgia Supreme Court, which had not been dismissed as untimely. (Id. at p. 12.) Defendants also assert their counsel submitted an amicus brief with the Georgia Supreme Court asking the Georgia Supreme Court to consider Plaintiff's appeal on the merits, as Plaintiff met the requirements of the prison mailbox rule. (Id.)

In response, Plaintiff states he attempted to get relief from the indigent mailing requirements through the grievance process but was unsuccessful. Instead, Plaintiff avers it was not until a new warden came to Coffee Correctional Facility that he was able to mail his appeal

documents to the courts and the opposing parties on August 7, 2012. (Doc. 29, pp. 4, 8.) Plaintiff contends Defendant Reed should have asked permission to exceed the postage limit amounts or mail two of his envelopes herself; instead, Plaintiff asserts Defendant Reed returned all of his envelopes to him on September 15, 2011, which was the deadline to file his appellate pleadings. (Id. at p. 7.) Plaintiff contends Defendants Cooper and CCA knew of the "dangers" associated with withholding legal postage from indigent inmates, as they had already been named defendants in another cause of action. (Id. at p. 11.)

Access to the courts is clearly a constitutional right, grounded in the First Amendment, the Article IV Privileges and Immunities Clause, the Fifth Amendment, and/or the Fourteenth Amendment." Chappell v. Rich, 340 F.3d 1279, 1282 (11th Cir. 2003) (citing Christopher v. Harbury, 536 U.S. 403, 415 n.12 (2002)). In order to pass constitutional muster, the access allowed must be more than a mere formality. Bounds v. Smith, 430 U.S. 817, 822 (1977); Chappell, 340 F.3d at 1282. The access must be "adequate, effective, and meaningful." Bounds, 730 U.S. at 822. For an inmate to state a claim that he was denied access to the courts, he must establish that he suffered "actual injury" by showing that the defendant's actions hindered his ability to pursue a non-frivolous claim. Christopher, 536 U.S. at 415; Jackson v. State Bd. of Pardons & Paroles, 331 F.3d 790, 797 (11th Cir. 2003). The pursuit of claims which are protected are those in which a plaintiff is attacking his sentence, directly or collaterally, or challenging the conditions of his confinement. See Lewis v. Casey, 518 U.S. 343 (1996). Stated another way, the "only specific types of legal claims [which] are protected by this right [are] the nonfrivolous prosecution of either a direct appeal of a conviction, a habeas petition, or a civil rights suit." Hyland v. Parker, 163 F. App'x 793, 798 (11th Cir. 2006) (citing Bass v. Singletary, 143 F.3d 1442, 1445 (11th Cir. 1998)). "Actual injury" is an essential element to a claim

asserting the denial of access to the courts. See Christopher, 536 U.S. at 415. An inmate can show an actual injury "by demonstrating that [his] efforts to pursue a nonfrivolous claim were frustrated or impeded by a deficiency in the prison library or in a legal assistance program or by an official's action." Barbour v. Haley, 471 F.3d 1222, 1225 (11th Cir. 2006) (citation omitted).

In Bounds, the Supreme Court held that it "is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents, with notarial services to authenticate them, and with stamps to mail them." 430 U.S. at 824–25. However, the Tenth Circuit Court of Appeals "has interpreted Bounds not to require states 'to pay the postage on every item of legal mail each and every prisoner wishes to send.'" Hoppins v. Wallace, 751 F.2d 1161, 1162 (11th Cir. 1985) (quoting Twyman v. Crisp, 584 F.2d 352, 359 (10th Cir. 1978)).

Here, the parties do not dispute that Coffee Correctional Facility had an indigent mailing policy in place at that time Plaintiff attempted to mail three envelopes on September 12, 2011, to meet the thirty-day deadline for filing a certificate of probable cause to appeal the denial of his state habeas corpus application. The parties agree that Plaintiff (like any indigent inmate) was limited to sending $2.20 worth of legal mail per week, and Plaintiff's three envelopes would have cost $2.76 to mail. Because of this policy, Plaintiff's three envelopes were not mailed for filing with the Georgia Supreme Court before September 15, 2011. However, it is also undisputed that two of Plaintiff's envelopes could have been mailed on or before September 15, 2011, and his third envelope could have been mailed the following week in compliance with the legal mail limits set by policy.[3] What the parties do dispute is whether Defendants' adherence to policy caused "actual injury" to Plaintiff's pursuit of a non-frivolous habeas corpus petition appeal.

---

[3] It is immaterial whether Plaintiff should have made the decision to mail his envelopes on different occasions, as Defendants assert, or whether Defendant Reed should have made this decision, as Plaintiff asserts.

9

Defendant Reed declared Plaintiff did not use his full indigent postage allotment between August 16, 2011, and September 16, 2011. (Doc. 24-1, p. 2.) Defendant Reed also declared Plaintiff only mailed one item through the indigent prisoner mail system on September 16, 2011, and he used $1.28 in postage for a legal matter.[4] (Id.) Plaintiff was able to mail his application for certificate of probable cause to appeal to the Georgia Supreme Court on August 8, 2012, and he used his original certificate of service with that application, which was dated September 12, 2011. (Doc. 29, p. 4; Doc. 52, p. 2.) Plaintiff's application was docketed in the Georgia Supreme Court on August 24, 2012. (Doc. 52, p. 8.)

On March 18, 2013, the Georgia Supreme Court dismissed Plaintiff's application. In doing so, the Georgia court stated:

> Although Davis's initial application for a certificate of probable cause to appeal the August 16, 2011 order dismissing his petition for writ of habeas corpus would have been timely under the mailbox rule since it bore a certificate of service dated September 12, 2011, it could not be accepted for filing because Davis failed to pay costs or to submit proof of indigency. See Supreme Court Rule 5. Accordingly, the application was returned to him. When the application was re-submitted with an affidavit of indigency, but no new certificate of service, it was filed pursuant to Supreme Court Rule 13(3) on August 24, 2012. Therefore, the application for a certificate of probable cause was not filed within 30 days after the entry of the order sought to be appealed, see OCGA § 9-14-52(b), and it hereby is dismissed. Fullwood v. Sivley, 271 Ga. 248 (517 SE2d 511) (1999).

(Doc. 52, p. 7 (citations as set forth in original).)

Even accepting as true Plaintiff's assertion that Defendants' actions hindered his ability to pursue a non-frivolous claim (i.e., caused some sort of impediment), Defendants are entitled to summary judgment. While Plaintiff's initial application for certificate of probable cause to appeal was returned by the Georgia Supreme Court, it was not because his first mailing was untimely. Id. To the contrary, the Georgia Supreme Court accepted the September 12, 2011,

---

[4] Though Defendants do not state this specifically, the Court presumes Defendants make note of Plaintiff not taking full advantage of his ability to use $2.20 per week for legal mailings in an effort to show that Plaintiff had the opportunity to mail these envelopes before September 15, 2011, and failed to do so.

date on the Certificate of Service as the date of filing. Id. In other words, Defendants' refusal to mail Plaintiff's documents in September of 2011 did not result in the documents being rejected as untimely. Rather, the Georgia Supreme Court rejected the documents because Plaintiff failed to pay the requisite filing fee or include any proof of his indigency. Then, when Plaintiff resubmitted his application with proof of his indigency, Plaintiff neglected to include a certificate of service. Id. It is this failure, not any actions of Defendants, which caused the Georgia Supreme Court to dismiss Plaintiff's application. Accordingly, Defendants' actions cannot be said to have caused an actual injury to Plaintiff's pursuit of his appeal of the denial of a state habeas corpus application. Manzini v. The Florida Bar, 511 F. App'x 978, 982 (11th Cir. 2013) (To successfully state a claim, a plaintiff must "establish an 'affirmative causal connection between [the Defendants'] acts or omissions and the alleged constitutional deprivation.'" (quoting Troupe v. Sarasota Cty., Fla. 419 F.3d 1160, 1165 (11th Cir. 2005)).[5]

Plaintiff has failed to create a genuine dispute as to the establishment of this causal connection. Consequently, Defendants are entitled to summary judgment, and their Motion is **GRANTED**.

---

[5] Plaintiff claims in his latest pleading the only reason he did not comply with Supreme Court Rule 13 was because he needed an additional $1.90 to mail the service copies, and he did not know how to go about getting this additional postage. (Doc. 56, pp. 2–3.) However, it appears Plaintiff misunderstands the Georgia court's order. Plaintiff's application was not dismissed for failure to mail service copies; rather, it was dismissed because Plaintiff failed to submit a certificate of service, which typically consists of one page. Thus, Plaintiff's claim that he needed an additional $1.90 in postage is disingenuous. In addition, Plaintiff's recent claim is contradicted by his statements that he wrote the new warden on July 25, 2012, to seek permission to get postage in excess of the $2.20 maximum authorized by policy and this request was authorized two days later. (Id. at p. 1.) Plaintiff apparently knew how to request additional postage in July 2012, the month before the Georgia Supreme Court asked him to re-submit his filings.

**IV.     Leave to Appeal *In Forma Pauperis***

The Court also **DENIES** Plaintiff leave to appeal *in forma pauperis*.[6] Though Plaintiff has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. See Fed. R. App. R. 24(a)(1)(A) ("A party who was permitted to proceed *in forma pauperis* in the district-court action, . . ., may proceed on appeal *in forma pauperis* without further authorization, unless the district court—before or after the notice of appeal is filed—certifies that the appeal is not taken in good faith[.]") (italics supplied). An appeal cannot be taken *in forma pauperis* if the trial court certifies, either before or after the notice of appeal is filed, that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Defendants' Motion for Summary Judgment, there are no non-frivolous issues to raise on appeal, and any appeal would not be taken in good faith. Thus, the Court **DENIES** Plaintiff *in forma pauperis* status on appeal.

---

[6] A Certificate of Appealability ("COA") is not required to file an appeal in a Section 1983 action.

## CONCLUSION

Based on the foregoing, Defendants' Motion for Summary Judgment, (doc. 24), is **GRANTED**, and Plaintiff's Complaint is **DISMISSED**. The Clerk of Court is **DIRECTED** to enter the appropriate judgment of dismissal and to **CLOSE** this case. Plaintiff's Motion to Amend, (doc. 56), is **GRANTED** in part and **DENIED** in part. Plaintiff is **DENIED** *in forma pauperis* status on appeal.

**SO ORDERED**, this 8th day of March, 2016.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA